United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 9, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-30861

DIRECTV INC,

Plaintiff-Appellant,

versus

MARC ROBSON,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, BARKSDALE, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

DIRECTV, Inc. ("DTV") appeals the district court's grant of summary judgment on its claims for illegal interception of its satellite transmissions in violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a), and for modification and assembly of pirate access devices in violation of 47 U.S.C. § 605(e)(4). We affirm as to the interception claims and vacate as to the device claims.[1]

I

DTV is a nationwide provider of direct-to-home satellite

---

[1] We heard oral argument in this case on May 11, 2005, with two related cases, which are also issued today. *See DIRECTV, Inc. v. Budden*, No. 04-20751, --- F.3d ---- (5th Cir. Aug. 9, 2005); *DIRECTV, Inc. v. Minor*, No. 04-50793, --- F.3d ---- (5th Cir. Aug. 9, 2005).

programming, including movie channels, sports, major cable networks, and local channels. DTV offers products on both a subscription and pay-per-view basis, and it encrypts--that is, digitally scrambles--its satellite broadcasts to guard against unauthorized access. A typical system consists of a small DTV-compatible satellite dish, a DTV receiver (also known as an "integrated receiver/decoder" or "IRD"), and a DTV access card. The dish connects to the receiver, which in turn connects to the user's television. A DTV access card, when inserted into the receiver, allows the receiver to decrypt the various channels or services that the user has purchased. A DTV access card is a smart card, similar in size and shape to a credit card, and also contains an embedded computer and memory.

Numerous "pirate access devices"[2] have been developed to circumvent the necessity of a valid access card, thereby allowing users to illegally decrypt the DTV satellite signal and thus obtain DTV programming without purchasing it. Such piracy can take various forms, including modifying a valid access card or using a device to take the place of a valid access card.

Defendant Marc Robson is a self-employed computer consultant who has, in the past, taken numerous technical education classes

---

[2] *See DIRECTV, Inc. v. Nicholas*, 403 F.3d 223, 224 (4th Cir. 2005) ("pirate access devices" are those devices "that can surreptitiously steal DIRECTV's transmissions"); *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 816 (11th Cir. 2004) ("pirate access devices" are those used "to circumvent this conditional access technology and allow users to receive the satellite transmissions provided by DTV without paying DTV any fees"); *see also DIRECTV, Inc. v. Barnes*, 302 F. Supp. 2d 774, 776 (W.D. Mich. 2004).

2

related to computers, taught classes on how to use various software packages, and done work for IBM. DTV has presented evidence indicating that Robson possessed an emulator, which is a printed circuit board that is inserted into the receiver in place of an access card. An emulator--used in conjunction with a personal computer, special software, a smart card reader/writer, a DTV access card, and a DTV receiver--allows an individual to intercept DTV's satellite programming without paying for it.[3]

According to DTV, on February 27, 2001, Robson posted a message at an internet website that acts as a clearinghouse of information regarding, among other things, pirate access devices and the pirating of satellite transmissions. The post read: "Just got my mc1489 chip and putting together an emulator. But haven't done anything like this before. When placing the chip into the pcb does the copper side go up or down?" The post was made under the username "dobson"--a username that had been registered utilizing the e-mail address of Robson's wife. Robson denies having an emulator, making the web post or even visiting the website. Robson also denies that emulators are primarily used for pirate activities.

DTV first became aware of Robson following its execution of a

---

[3] The computer, running the special "pirate" software, is connected via two separate cables to the emulator (which is inserted into the receiver) and to the reader/writer (into which the access card is inserted). With this system, the emulator is able to mimic the behavior of an access card unlocking the full range of DTV programming.

writ of seizure at a mail shipping facility used by a device merchant named Card Unlooping. Records seized indicated that Robson purchased a PS2 Plus SU2 Unlooper ("the unlooper"), worth $249.00, on March 5, 2001. According to DTV, the unlooper can be used to alter or restore functionality to DTV access cards that have been disabled by misuse or by an ECM;[4] it acts as a smart card reader/writer, but with additional capabilities. DTV maintains that the unlooper has no commercially significant purpose other than piracy.

Robson admits to purchasing the unlooper, but claims he did so to program smart cards for security purposes.[5] Robson invokes his position as a consultant and his desire to anticipate prospective clients' needs to justify his interest in learning smart card technology. He maintains that he threw the unlooper away after being unable to make it work.

Before us are DTV's claims against Robson for violations of the Communications Act of 1934,[6] as well as for violations of Title

---

[4] In order to combat the proliferation of illegally modified access cards, DTV periodically sends out electronic countermeasures ("ECMs") embedded within its satellite transmissions. ECMs detect and disable modified access cards, sending them into an infinite "loop." *See Minor*, No. 04-50793, at 3 n.3, --- F.3d at ---- n.3.

[5] Robson has presented evidence, including "whitepapers," suggesting that the unlooper he purchased is merely one of the many smart card reader/writers that have legitimate uses. DTV counters that the unlooper in question is not a run-of-the-mill smart card reader/writer, but rather has additional functionality--voltage and clock manipulation, or "glitching"--with the "sole function" being "to program and manipulate DIRECTV access cards." DTV maintains that the "SU2" designation in the unlooper's name is an indication that the unlooper has such additional capabilities.

[6] 48 Stat. 1064, as amended (codified in relevant part at § 605).

4

III of the Omnibus Crime Control and Safe Streets Act of 1968 (Wiretap Act).[7]  Specifically, DTV alleged illegal interception of DTV's satellite transmission per 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a), and illegal modification and assembly of pirate access devices in violation of 47 U.S.C. § 605(e)(4).[8]

The district court granted summary judgment to Robson on these claims.[9]  As to § 605(a) and § 2511(1)(a), the district court held that "[m]ere possession of unloopers and emulators is insufficient to raise an inference of illicit use of these devices."[10]  The district court held that § 605(e)(4) does not apply to "individual users."[11]  DTV timely appeals.

## II

We review a grant of summary judgment *de novo*, applying the same standard as the district court.[12]  "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as

---

[7] Pub. L. No. 90-351, tit. III, § 802, 82 Stat. 211, 212-23, as amended (codified at 18 U.S.C. §§ 2510-2522).

[8] DTV voluntarily dismissed its claims for violation of 18 U.S.C. § 2512 and state civil conversion law.

[9] *See DIRECTV, Inc. v. Robson*, 333 F. Supp. 2d 589 (W.D. La. 2004).

[10] *Id.* at 594.

[11] *Id.* at 595.

[12] *See Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002); FED. R. CIV. P. 56.

a matter of law."[13]  "An issue is material if its resolution could affect the outcome of the action."[14]  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[15]

The district court was obligated to "consider the evidence in the light most favorable"[16] to DTV as the nonmovant, and to "indulge every reasonable inference from the facts" in favor of DTV.[17]  If a movant alleges an absence of specific facts necessary for a nonmovant to establish an essential element of its case, then the nonmovant "must respond by setting forth 'specific facts showing that there is a genuine issue for trial.'"[18]  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."[19]

III

---

[13] *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c)).

[14] *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[15] *See Anderson*, 477 U.S. at 251-52.

[16] *Caboni*, 278 F.3d at 451 (internal quotation marks and citation omitted); *see Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

[17] *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1064 (5th Cir. 1993).

[18] *Slaughter v. S. Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991) (quoting *Anderson*, 477 U.S. at 249).

[19] *Caboni*, 278 F.3d at 451 (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

DTV challenges the district court's grant of summary judgment on its interception claims under § 605(a) and § 2511(1)(a). Robson counters that DTV cannot succeed on these claims because there is insufficient evidence to support a finding that Robson actually intercepted or otherwise unlawfully appropriated DTV's transmissions. We are persuaded that DTV's relatively weak circumstantial evidence fails to forestall summary judgment in this case.

A

DTV's interception claims implicate the criminal provisions in § 605(a) and § 2511(1)(a), in conjunction with their respective civil remedies.

Section 605(a) provides, in part, that

> no person receiving [or] assisting in receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the . . . contents . . ., except [in authorized circumstances.] No person not being authorized by the sender shall *intercept* any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or for the benefit of another not entitled thereto.[20]

Section 605(e)(3)(A), in turn, provides a civil remedy for "[a]ny person aggrieved by any violation of [§ 605(a)] or [§ 605(e)(4)]."[21]

---

[20] 47 U.S.C. § 605(a) (emphasis added).

[21] 47 U.S.C. § 605(e)(3)(A).

Similarly, § 2511(1)(a) imposes criminal liability upon any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."[22]  A civil action is provided in § 2520(a): "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."[23]

To prevail on its claims for violations of § 605(a) and § 2511(1)(a), DTV must demonstrate that Robson intercepted or otherwise unlawfully appropriated DTV's transmission.[24] DTV has not presented any direct evidence that Robson engaged in illegal interception, or that Robson even had the DTV equipment necessary for interception--specifically, a DTV access card, DTV receiver, and DTV satellite dish.

Circumstantial evidence can support a finding that a

---

[22] 18 U.S.C. § 2511(1)(a).

[23] 18 U.S.C. § 2520(a).

[24] *See, e.g.*, *Forsyth*, 19 F.3d at 1537 (holding that plaintiffs, asserting violations of § 2511, had not produced "evidence sufficient to demonstrate the existence of a material fact issue on whether the appellees intentionally intercepted their conversations"). We refer to this necessary element simply as "interception."

communication was intercepted, even absent direct evidence.[25]   In some contexts we have indicated that circumstantial evidence must be relatively strong to successfully avert summary judgment.[26] Today we address whether the circumstantial evidence presented is sufficient to allow an inference of actual interception.  One court recently noted that to the best of its knowledge,

> no court has expressly addressed the sufficiency of circumstantial proof required for DIRECTV to establish actual interception of its satellite signals when a defendant admits that he purchased a device to receive free DIRECTV but denies that he was [able] to use the Pirate Access Device to actually

---

[25] *See, e.g.*, *Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir. 1990) (addressing interception claim under § 2520 and noting that "[d]irect evidence may not have been available based on the stealthiness of the invasion" (internal quotation marks and citation omitted)); *Scutieri v. Paige*, 808 F.2d 785, 790 (11th Cir. 1987) (Reynaldo Garza, J., sitting by designation); *DIRECTV, Inc. v. Gemmell,* 317 F. Supp. 2d 686, 693 (W.D. La. 2004) (citing *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 436 (2nd Cir.2002)); *DIRECTV, Inc. v. Boonstra*, 302 F. Supp. 2d 822, 833 (W.D. Mich. 2004); *Barnes*, 302 F. Supp. 2d at 782; *see also Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960) ("[D]irect evidence of a fact is not required.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.").

[26] For example, in *Thomas v. Great Atlantic & Pacific Tea Co.*, 233 F.3d 326 (5th Cir. 2000), we held summary judgment improper where plaintiff had "adduced strong circumstantial evidence to establish an essential element of her claim, and the defendant, in contrast, has offered evidence that, although direct, is weak or highly suspect."  *Id.* at 329.  In that dram shop case, the key issue was whether there was sufficient evidence to find that a patron had actually consumed beer purchased at the defendant liquor store.  Based on the strong circumstantial evidence of the patron's drunken state upon making the purchase and upon the patron's more thoroughly drunken state later in the evening, we held that a reasonable jury could conclude that he drank his purchase in the meantime, notwithstanding the defendant liquor store's direct evidence--consisting of self-serving affidavits from the patron and patron's companion--indicating that the patron did not drink the beer.
In *Slaughter v. Southern Talc Co.*, 949 F.2d at 171-73, we addressed the use of circumstantial evidence to avoid summary judgment on claims of exposure to asbestos.  We held that summary judgment as to one defendant was proper, but not as to the other defendant because the circumstantial evidence "indicated a significant probability that plaintiffs worked in close proximity to [asbestos-containing] insulation, even though no witness testified to seeing plaintiffs work near [it]."  *Id.* at 171-72.

receive or intercept DIRECTV's signal.[27] Although the defendant here never admitted to illicit intentions in purchasing the pirate access device, we echo this sentiment in the face of a similar paucity of guiding caselaw.

DTV put forth the following circumstantial evidence as bearing upon its interception claims: (1) Robson posted a message on an internet website devoted to piracy indicating that he possessed an emulator and that he needed help in assembling it; (2) roughly six days later Robson purchased an unlooper for $249.00; and (3) both of these devices--emulators and unloopers--are designed for the purpose of pirating DTV's satellite transmission, and neither of these devices can be used for other legitimate, commercial purposes.[28]

This circumstantial evidence of interception is confined largely to demonstrating the purchase and possession of the devices at issue, rather than the use of those devices to intercept DTV's transmissions. Even indulging all reasonable inferences, we are persuaded that the evidence here falls short of the quantum necessary on the key element of interception.

B

Along this line, we note that there is conspicuously no civil action for merely possessing or purchasing a pirate access device.

---

[27] *Barnes*, 302 F. Supp. 2d at 782; *see also Boonstra*, 302 F. Supp. 2d at 833.

[28] DTV also calls into question Robson's credibility.

Neither § 605(a) nor § 2511(1)(a) is violated by such conduct.[29] By comparison, § 2512(1)(b) *does* makes it a crime to "intentionally . . . possess[] . . . any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications[.]"[30] Tellingly, however, the civil cause of action embodied in § 2520 does not cover such possessory violations.[31] Had Congress wanted to provide a civil action for possessing or purchasing pirate access devices, it could have done so, subject of course to constitutional constraints.[32] The impulse to conclude from the

---

[29] Section 605(e)(4), addressed *infra*, also does not address possession and purchase.

[30] 18 U.S.C. § 2512(1)(b).

[31] *See* 18 U.S.C. § 2520(a) (providing civil action for person whose "electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter"); *DIRECTV, Inc. v. Treworgy*, 373 F.3d 1124, 1129 (11th Cir. 2004) (no private right of action under § 2520 against a person for possession of pirate device in violation of § 2512(1)(b)); *accord DIRECTV, Inc. v. Deskin*, 363 F. Supp. 2d 254, 260 (D. Conn. 2005) ("Claims based on evidence of mere possession are expressly excluded from the list of grievances subject to civil remedy through § 2520(a)."); *DIRECTV, Inc. v. DeCroce*, 332 F. Supp. 2d 715, 719 (D.N.J. 2004); *Gemmell*, 317 F. Supp. 2d at 691 n.2 (collecting cases); *DIRECTV, Inc. v. Boggess*, 300 F. Supp. 2d 444, 448 (S.D.W.Va. 2004); *DIRECTV, Inc. v. Beecher*, 296 F. Supp. 2d 937, 940-43 (S.D. Ind. 2003); *DIRECTV, Inc. v. Hosey*, 289 F. Supp. 2d 1259, 1262-64 (D. Kan. 2003); *DIRECTV, Inc. v. Amato*, 269 F. Supp. 2d 688, 691 (E.D. Va. 2003); *cf. Flowers v. Tandy Corp.*, 773 F.2d 585, 588 (4th Cir. 1985) (interpreting pre-1986 version of § 2520 and finding "no merit in [the] assertion that § 2520 expressly provides a private cause of action for violations of the criminal proscriptions of § 2512"); *but see, e.g., DIRECTV, Inc. v. Gatsiolis*, 2003 WL 22111097, at *1-*2 (N.D. Ill. Sept. 10, 2003); *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1084 (C.D. Cal. 2002).

[32] *See, e.g., Treworgy*, 373 F.3d at 1127 (noting possible constitutional difficulties were 18 U.S.C. § 2520 to be read as giving civil right of action against a defendant for possession of pirate access device).

possession or purchase of pirate access devices that the defendant *must* have used them--why else *would* he buy them?--is a powerful one. However, the danger lurking therein is in effectively creating a *de facto* civil action for possession or purchase. Allowing the claims for interception to proceed in the present case would indicate that little more than mere possession or purchase is needed to give rise to civil liability under these statutes.

C

The evidence here is largely confined to the possession and purchase of the pirate access devices themselves, as opposed to the use thereof to actually intercept DTV's signals. DTV has been unable to produce evidence that defendant had the DTV equipment necessary to intercept a signal--specifically, a DTV dish, receiver and access card. This is not to suggest that there always must be direct evidence as to each and every piece of necessary equipment. After all, the components--perhaps with the exception of a dish on the outside of a house--are capable of being kept and used in stealth.[33] However, the additional circumstantial evidence beyond purchase and possession here is slim.

The evidence that Robson was "putting together" the emulator

---

[33] *Cf. United States v. Harrell*, 983 F.2d 36, 38 (5th Cir. 1993) (addressing satellite piracy crime, per § 2512(1)(b), involving devices primarily for "surreptitious interception"); *United States v. Lande*, 968 F.2d 907, 910 (9th Cir. 1992) ("Satellite transmissions could not be intercepted any more 'surreptitiously' than by these [pirate] devices which cannot be detected by producers of electronic television programming." (brackets omitted)); *cf. C.A. Articulos Nacionales de Goma Gomaven v. M/V Aragua*, 756 F.2d 1156, 1159 n.7 (5th Cir. 1985).

does not get us much further than to conclude that he eventually possessed a functional emulator.[34] It is true that the possession of *two* purported pirate devices (the unlooper and the emulator) strengthens the circumstantial evidence somewhat. From the timeline associated with these two devices, it would perhaps not be unreasonable to infer that the unlooper was acquired to restore functionality to a damaged access card. Even so, at root, the evidence of these two devices--as opposed to one--gets us little closer to actual interception and is still confined largely to possession of pirate access devices.

D

Although caselaw addressing the quantum of evidence necessary to survive summary judgment on interception claims is less than robust at the circuit level,[35] our conclusion finds additional support in recent district court cases. On one hand, contrary to our holding today, some district courts have found possession of pirate devices sufficient to give rise to an inference of

---

[34] Of course, such evidence might have a significant impact on DTV's claim for violation of § 605(e)(4), discussed further below.

[35] DTV points us to our decision in *United States v. Harrell*, 983 F.2d 36 (5th Cir. 1993), wherein we affirmed a defendant's conviction for manufacturing and selling pirate access devices in violation of 47 U.S.C. § 605(e)(4) and 18 U.S.C. § 2512(1)(b). DTV emphasizes our statement in *Harrell* that "[w]e find it unreasonable to believe that an individual, having illegally spent about $300 for the modified chip, will still primarily limit himself to his originally paid programming," *id.* at 38, to support its argument that, essentially, any possession of a pirate access device gives rise to an inference of interception. However, in *Harrell*, our focus was on determining whether the devices were "primarily designed for electronic eavesdropping proscribed by § 2512(1)(b)" and we were not addressing the measure of evidence required to sustain an interception claim. *Id. Harrell* sheds little light on the present case.

13

interception for summary judgment purposes.[36]  On the other hand, we are persuaded by the many courts that have indicated explicitly or implicitly that some additional evidence beyond mere possession is necessary for the plaintiff to survive summary judgment on an interception claim.[37]

_____

[36] *See, e.g.*, *DIRECTV, Inc. v. Weikel*, No. Civ. 03-5300(JBS), 2005 WL 1243378, at *13 (D.N.J. May 25, 2005) (denying summary judgment to defendant on § 605(a) and § 2511 claims, noting that from "circumstantial evidence of possession" of pirate access devices, DTV "can argue actual use and unauthorized interception of its satellite signals" and that "[i]ndeed, use is easily implied from mere possession of such a device, given the nature of the instrument and its sole function"); *cf. DIRECTV, Inc. v. Neznak*, 371 F. Supp. 2d 130, 134 (D. Conn. 2005) (holding in granting default judgment to DTV that "defendant's purchase of five emulators and one unlooper supports an inference of six separate violations of § 605(a)"); *DIRECTV, Inc. v. Hendrix*, No. C-04-0370 JSW (EMC), 2005 WL 757562, at *3 (N.D. Cal. Apr. 1, 2005) (where defendant purchased a very large number of devices (200) there was a "strong inference that these purchases were made not for personal use but to assist others in intercepting transmission" and thus there is a "valid claim for a violation of § 605(a)"); *DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1128 (M.D. Ala. 2004) (holding in granting default judgment to DTV that "the court can infer from his possession of the [pirate access] devices that [defendant] received DIRECTV's signal without authorization in violation of § 605(a)"); *DIRECTV, Inc. v. Albright*, No. Civ.A. 03-4603, 2003 WL 22956416, at *2 (E.D. Pa. Dec. 9, 2003) (holding in granting default judgment to DTV that defendant's purchase of pirate access device leads "to the natural inference that he used it to pirate DirecTV's television transmissions for his own personal benefit").

[37] *See, e.g.*, *DIRECTV, Inc. v. Tadlock*, No. Civ.A. 03-1456, 2005 WL 1458645, at *2-*3 (E.D. La. May 24, 2005) (granting summary judgment to defendant on interception claims where there was evidence of purchase of a "Viper Unlooper with WT2 Code," and defendant was a DTV subscriber who had all the necessary equipment, but where there was no evidence that he used the device to access more services than he had purchased); *Deskin*, 363 F. Supp. 2d at 258-59 (granting summary judgment to defendant even though defendant, a DTV subscriber, had an unlooper and all necessary DTV equipment); *DIRECTV, Inc. v. McCool*, 339 F. Supp. 2d 1025, 1034-35 (M.D. Tenn. 2004) (denying summary judgment for defendant where evidence showed defendant purchased unlooper, and where it was undisputed that defendant had all DTV equipment necessary for interception and shortly after the purchase of the unlooper downgraded his DTV programming package); *DIRECTV, Inc. v. Jones*, No. A-03-CA-706-SS (W.D. Tex. May 5, 2004) (refusing to grant summary judgment to defendant where there was evidence not only of the illicit device, but also of the necessary DTV equipment, in addition to evidence that the defendant ended his subscription at the same time as the purchase of the device); *Gemmell*, 317 F. Supp. 2d at 693 (granting summary judgment where DTV had not presented evidence of "actual interception"--*i.e.* that defendant "actually used the equipment it allegedly possessed"--but noting that, in general, "computer records that show the purchase *and installation* of equipment designed to

14

For example, the court in *DIRECTV, Inc. v. Barnes*, in ultimately denying summary judgment, acknowledged that

> it is not enough for a plaintiff merely to show that a defendant possessed equipment capable of intercepting a communication in order to show that the defendant actually received or intercepted the plaintiff's communication. Rather, the plaintiff must produce circumstantial evidence sufficient to support the conclusion that there was an actual interception.[38]

---

unlawfully intercept electronic communications will suffice to create a rebuttable presumption of a violation of Section 605" (emphasis added) (citing *Caruso*, 284 F.3d at 436)); *DIRECTV, Inc. v. Garnett*, No. C-03-346, at 10 (S.D. Tex. Feb. 26, 2004) (granting summary judgment to defendant, a DTV subscriber, despite defendant's purchase of an unlooper and defendant's possession of all necessary DTV equipment where defendant's "subscriber records do not raise an inference of pirate activity" and there was "no correlation between [defendant's] purchase of the device . . . with a corresponding decline in DIRECTV billing or use"); *DIRECTV, Inc. v. Spokish*, No. 6:03-CV-680-ORL-22DAB, 2004 WL 741369, at *2 (M.D. Fla. Feb. 19, 2004) (denying summary judgment where there was evidence that defendant possessed the necessary DTV equipment and also purchased three "MK Unlooper-SU2s," purportedly "as part of a computer engineering experiment"); *Boonstra*, 302 F. Supp. 2d at 835-36 (denying summary judgment where evidence indicated not only possession of all necessary equipment, but also purchase of unlooper, awareness of unlooper's nature, actual attempt to use unlooper, and contemporaneous cancellation of DTV subscription, in addition to purchase of reader/writer for express purpose of modifying access cards to receive DTV programming); *Barnes*, 302 F. Supp. 2d at 784-86 (similar); *DIRECTV, Inc. v. Bush*, No. H-03-1765 (S.D. Tex. Oct. 24, 2003) (granting summary judgment for the defendant where, apart from possession of the pirate device, the plaintiff had failed to produce any evidence of the other components necessary for interception--*i.e.* the DTV dish, receiver, and access card); *DIRECTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 921-22 (E.D. Mich. 2003) (denying summary judgment where the defendant had purchased all the necessary DTV equipment, in addition to a pirate access device); *DIRECTV, Inc. v. Presgraves*, No. SA-04-CA-92-RF (W.D. Tex. Apr. 15, 2003) (denying summary judgment to defendant where defendant, a DTV subscriber, had a pirate access device and all the necessary DTV equipment to intercept transmissions); *see also Caruso*, 284 F.3d at 432-33 (affirming district court's judgment for plaintiff where there was evidence of possession *and installation* of equipment necessary for interception, in addition to negative inferences permissibly drawn in civil case from defendants' refusal to testify under the Fifth Amendment), *affirming* 134 F. Supp. 2d 455 (D. Conn. 2000); *DIRECTV, Inc. v. Getchel*, 2004 WL 1202717, at 1 (D. Conn. May 26, 2004) (inferring interception in default judgment context, noting that "[t]he unlooper device, working in conjunction with the satellite dish, satellite receiver, and other equipment that [defendant] had in his possession, made it possible for [defendant] to intercept and receive DIRECTV's signals without authorization").

[38] 302 F. Supp. 2d at 783-84.

In *Barnes* the court was faced with evidence not only that the defendant purchased and possessed a pirate access device (an unlooper), but that he was a DTV subscriber who possessed all the necessary DTV equipment; *admitted* that he purchased the device "for the purpose of attempting to obtain free DIRECTV programming and that he actually attempted to use the device"; and had a suspicious subscriber history--a record of "frequent suspending and reactivating of his DIRECTV services[, which] is consistent with unauthorized interception of DIRECTV's satellite signals."[39] The present case is devoid of such additional evidence.

In *DIRECTV, Inc. v. Morris*,[40] the court granted summary judgment to a defendant who had purchased a smart card reader/writer and later an unlooper, despite the defendant's having been a DTV subscriber and thus, presumably, possessed of the necessary equipment for interception.[41] The defendant attempted to modify his access card with the smart card reader/writer;

---

[39] *Id.* at 784. The same district court judge as in *Barnes* issued a number of opinions along similar lines on the same day--in each case denying defendants' summary judgment motions on § 605(a) and § 2511 claims, but placing significant weight on the defendants' possession of all necessary equipment for interception, as well as other evidence in excess of mere possession and purchase of the pirate access devices themselves. *See DIRECTV, Inc. v. Gilliam*, 303 F. Supp. 2d 864, 871-72 (W.D. Mich. 2004); *DIRECTV, Inc. v. Brower*, 303 F. Supp. 2d 856, 863 (W.D. Mich. 2004); *Boonstra*, 302 F. Supp. 2d at 832-36; *DIRECTV, Inc. v. Vanderhoek*, 302 F. Supp. 2d 814, 820-21 (W.D. Mich. 2004); *DIRECTV, Inc. v. Pluskhat*, 302 F. Supp. 2d 805, 807, 808-10 (W.D. Mich. 2004); *DIRECTV, Inc. v. Hyatt*, 302 F. Supp. 2d 797, 803-04 (W.D. Mich 2004); *DIRECTV, Inc. v. Beauchamp*, 302 F. Supp. 2d 786, 794-96 (W.D. Mich. 2004).

[40] 357 F. Supp. 2d 966 (E.D. Tex. 2004).

[41] *See id.* at 969-73.

apparently "messed up his system"; sought advice from a "pirate" website; and, on that advice, purchased an unlooper to fix the card. Nonetheless, the court granted summary judgment to the defendant on the § 605(a) and § 2511 claims, holding no actual interception could be shown: "There is no evidence that Morris ever intercepted any satellite transmissions. The fact that he had the *opportunity* is wholly deficient to sustain an award for statutory damages."[42]

Whether or not the cases cited above strike precisely the correct pose in assessing the necessary quantum of evidence in addition to purchase and possession, we are persuaded that the present case falls short. Where, as here, the evidence demonstrates little more than mere purchase and possession of the two pirate access devices--particularly where there is no evidence as to other DTV components required for interception--such evidence is insufficient to withstand summary judgment on DTV's claims of actual interception.

IV

DTV also argues that summary judgment should not have been granted as to its claims under § 605(e)(4), per the corresponding civil action provided for in § 605(e)(3)(A), for assembly or modification of a pirate access device. We agree.

A

---

[42] *Id.* at 972 (emphasis added).

Section 605(e)(4) reads:

> *Any person* who manufactures, *assembles*, *modifies*, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by [§ 605(a)], shall be [criminally liable].[43]

In its brief on appeal, DTV describes its claim for violation of this provision as follows:

> DIRECTV alleges that Robson violated 47 U.S.C. § 605(e)(4) by assembling a device called an "emulator" which, when used in conjunction with a computer and certain software, will allow an individual to decrypt DIRECTV's satellite transmissions and receive DIRECTV programming without paying for it. DIRECTV also alleges that Robson violated 47 U.S.C. § 605(e)(4) by using a different device called an "unlooper" to modify a DIRECTV access card to enable it to illegally decrypt DIRECTV's satellite transmissions.

With respect to this claim, the district court held that Robson's "assembly of the emulator is not actionable under § 605(e)(4)" because "[§] 605(e)(4) is a provision relating to manufacturers and sellers, rather than to individual users as Defendant is alleged to be."[44]

### B

We are persuaded that the district court erred by

---

[43] 47 U.S.C. § 605(e)(4) (emphasis added).

[44] *Robson*, 333 F. Supp. 2d at 595 (citing *Caruso*, 284 F.3d at 435 n.6).

18

categorically removing all "individual users" from the reach of § 605(e)(4). A number of courts have adopted a similar construction, holding that § 605(e)(4) exempts individual users-- that is, the provision "targets upstream manufacturers and distributors, not the ultimate consumer of pirating devices."[45] We reject this view. Nothing on the face of §605(e)(4) suggests such a limitation. Indeed, it provides that "*[a]ny* person" who engages in the prohibited activities is liable.[46] Section 605(e)(4), in its disjunctive list of prohibited activities, clearly covers the *modification* or *assembly* of pirate devices as separate and self-contained offenses by *whoever* commits them. While such activities are, no doubt, commonly within the purview of a "manufacturer" or "seller," there is no indication that the statute is intended to condone it when the actor is instead an "individual user." Lending

---

[45] *Albright*, No. Civ.A. 03-4603, 2003 WL 22956416, at *2; *see, e.g.*, *DIRECTV, Inc. v. Oliver*, No. 04-3454 SBA, 2005 WL 1126786, at *3 (N.D. Cal. May 12, 2005) ("[Section] 605(e)(4) is meant to target upstream manufacturers and/or distributors of illegal pirating devices."); *Neznak*, 371 F. Supp. 2d at 133 ("Congress intended in [§ 605(e)(4)] to penalize manufacturers and distributors, not mere consumers of pirate access devices."); *DIRECTV, Inc. v. McDougall*, No. Civ.A. SA-03-CA-1165, 2004 WL 2580769, at *3 (W.D. Tex. Nov. 12, 2004) ("Courts that have addressed the issue have concluded that mere purchasing and use of pirate access devices does not constitute a violation of section 605(e)(4)."); *DIRECTV, Inc. v. Borich*, No. Civ.A. 1:03-2146, 2004 WL 2359414, at *3 (S.D.W.Va. Sept. 17, 2004) ("[T]he court does not find that the act of 'removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV Receivers' is the type of assembly or modification prohibited by the statute. . . . Borich's act of installing and activating the pirate access device does not convert him into the type of manufacturer or distributor of these devices contemplated by [§] 605(e)(4)."); *cf. Morris*, 357 F. Supp. 2d at 973 (noting that § 605(e)(4) "deals with conduct of merchants in the pirate trade, not necessarily the ultimate end users," but acknowledging that perhaps DTV "could argue that an individual end user could be liable for modification of equipment").

[46] 47 U.S.C. § 605(e)(4) (emphasis added).

19

weight to our interpretation, we have previously noted in a different context that "it is clear that [§ 605(e)(4)] pertains to commercial as well as individual users."[47]

While the statute is clear on its face, it bears mention that prior to 1988 the provision read:

> The importation, manufacture, sale, or distribution of equipment by any person with the intent of its use to assist in any activity prohibited by subsection (a) shall be subject to penalties and remedies under this subsection to the same extent and in the same manner as a person who has engaged in such prohibited activity.[48]

Among other changes, the 1988 amendments to this section introduced three new terms: "assembles," "modifies," and "exports."[49] The district court's reading effectively nullifies these additions and, indeed, all of the terms listed in § 605(e)(4) other than "manufactures" and "sells."

The district court's reliance on a footnote from the Second Circuit's decision in *Community Television Systems, Inc. v. Caruso* is misplaced.[50] *Caruso* is focused on determining how to assess the number of *§ 605(a)* violations and only mentions § 605(e)(4) in

---

[47] *Harrell*, 983 F.2d at 40.

[48] 47 U.S.C. § 605(d)(4) (1988) (current version at § 605(e)(4)); *see* Cable Communications Policy Act of 1984, Pub. L. No. 98-549, § 5(a), 98 Stat. 2779, 2803.

[49] *See* Satellite Home Viewer Act of 1988, Pub. L. No. 100-667, tit. II, § 205, 102 Stat. 3949, 3959-60.

[50] *See* 284 F.3d at 435 n.6.

passing as an example of a provision that bases the number of violations on the number of devices.[51]   *Caruso* notes that § 605(e)(4) is "the provision relating to manufacturers and sellers, rather than users, of cable descramblers, which states that 'each such device shall be deemed a separate violation.'"[52] At best, this comment is dictum.  In any case, it appears that the Second Circuit is speaking in broad strokes in this footnote and a sensible reading of the court's comment is simply that § 605(e)(4) does not apply to *mere* users--*i.e.* tautologically anyone who does not perform one of the activities mentioned: manufacturing, assembly, modification, etc.  There is no indication in the context of *Caruso* that the court intended by its remarks to limit the clear reach of § 605(e)(4) or to introduce a distinction not found in the statute.

In short, we hold that § 605(e)(4) prohibits each of the activities listed therein, and provides no exception for "individual users."

C

Robson did not defend the district court's ruling with regard to "individual users."  Instead, Robson asserts on appeal that, in order to demonstrate that DTV is a "person aggrieved" who can bring a device claim for violation of § 605(e)(4), DTV "must demonstrate

---

[51] *See id.* at 435 & n.6.

[52] *Id.* at 435 n.6 (quoting 47 U.S.C. § 605(e)(4)).

actual interception." Robson argues that "[a]ctual interception of DirecTV's programming is required in order for DirecTV to be a 'person aggrieved' under 47 U.S.C. § 605(d)(6) as is required to recover damages."[53] While it is not clear that Robson raised this argument below,[54] even assuming that such an argument is properly before us,[55] it is equally unavailing.

Plainly, nothing on the face of § 605(e)(4) indicates that interception is a required element for a violation. Further, no interception is required for DTV to qualify as a "person aggrieved" under the terms of § 605(e)(3)(A).[56] Robson's argument to the contrary essentially amounts to an assertion that § 605(d)(6) is an

---

[53] 47 U.S.C. § 605(d)(6) provides:
> [T]he term "any person aggrieved" shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and, in the case of a violation of [§ 605(e)(4)], shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

[54] We are pointed to no place in the record where it was raised; only by stretching the language in Robson's summary judgment motion can such an argument be found. *Cf. Robson*, 333 F. Supp. 2d at 592 (noting, in discussing § 605(a) claim, that "[f]or purposes of this motion I believe and will assume DTV is a 'person' with proprietary rights in its satellite programming").

[55] *See Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 258 (5th Cir. 2001) ("We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court."); *Johnson v. Sawyer*, 120 F.3d 1307, 1316 (5th Cir. 1997) ("Although we can affirm a summary judgment on grounds not relied on by the district court, those grounds must at least have been proposed or asserted in that court by the movant."); *Thompson v. Ga. Pac. Corp.*, 993 F.2d 1166, 1167-68 (5th Cir. 1993) ("If this Court determines that the district court erred in its stated reason for granting summary judgment, the judgment of the district court can nonetheless be affirmed provided other adequate grounds for granting summary judgment appear.").

[56] *See* 47 U.S.C. § 605(e)(3)(A) ("Any person aggrieved by any violation of [§ 605(a)] or [§ 605(e)(4)] may bring a civil action in a United States district court or in any other court of competent jurisdiction.").

exhaustive list of those who fit within the scope of "any person aggrieved." We rejected such a contention today in a related case and need not retrace the same path here.[57]

Having rejected both the district court's stated reasons for granting summary judgment on DTV's § 605(e)(4) claim and Robson's proffered alternate grounds, we decline to go further. That is, we offer no opinion at this time on whether Robson's alleged actions in inserting a chip into an emulator qualify as "assembl[y]"[58] or whether the alleged use of an unlooper to alter a DTV access card qualifies as "modifi[cation]"[59] within the meaning of § 605(e)(4). We leave that to the district court to consider again in the first instance.

V

To summarize, the inferences from the facts in this case cannot stretch to "interception," per § 605(a) and § 2511(1)(a); summary judgment on these claims in favor of Robson was proper. However, the district court erred in categorically excluding "individual users" from claims under § 605(e)(4); summary judgment on this claim is vacated, affording the district court the opportunity to consider in the first instance whether the evidence is sufficient to demonstrate assembly or modification within the

---

[57] *See Budden*, No. 04-20751, at 9-14, --- F.3d at ----.

[58] *See Robson*, 333 F. Supp. 2d at 594 (noting that posting on the website "[a]t first blush . . . may raise a justifiable inference as to assembly").

[59] *Cf. MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 225 (1994); *United States v. Crawford*, 52 F.3d 1303, 1309-10 (5th Cir. 1995); *Harrell*, 983 F.2d at 37-39.

23

meaning of § 605(e)(4).[60]


AFFIRMED IN PART, VACATED IN PART, and REMANDED; SANCTIONS DENIED.

---

[60] Robson's request for sanctions for a frivolous appeal is denied.  We further note that Robson's narrative of facts in his brief on appeal arrives unadorned with citations to the record, contrary to FED. R. APP. P. 28(a)(7).